IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         CRIMINAL ACTION NO. 1:17-cr-00506

ISABEL FITZGERALD, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Steven Maudlin's ("Maudlin") Motion for Reconsideration of Steven Maudlin's Motion to Suppress Statements. (ECF No. 222.) For the reasons more fully explained below, the motion is **DENIED**.

### I.    BACKGROUND

This motion arises out of a motion to suppress, in which Defendant Maudlin moved the Court to suppress statements he made to the Federal Bureau of Investigation ("FBI") during an interview conducted concerning the investigation of this criminal action. (*See* ECF Nos. 60, 120.) On April 7, 2021, this Court held a virtual motions hearing (the "Motions Hearing"), at which the Court received arguments from the parties concerning several motions *in limine*, as well as the subject Motion to Suppress. (ECF No. 208.) Concerning the motion to suppress, the Court ultimately denied the motion for reasons more fully stated on the record at the hearing. (*See* ECF No. 215 at 2.)

Defendant Maudlin thereafter filed the instant motion for reconsideration on April 14, 2021. (ECF No. 222.) Following a period of time, the Government responded in opposition on June 21,

2021.¹  (ECF No. 231.)  Maudlin filed his reply on June 29, 2021.  (ECF No. 232.)  With the briefing complete, the motion is ripe for adjudication.

## II. LEGAL STANDARD

The Federal Rules of Criminal Procedure do not contemplate a motion for reconsideration. *See United States v. Carroll*, No. 7:12-CR-57-F, 2012 WL 5350364 at *1 (E.D.N.C. Oct. 29, 2012). Federal courts, when faced with the issue, have turned to Rule 59 of the Federal Rules of Civil Procedure, describing it as an "apt analogy."  *See United States v. Greenwood,* 974 F.2d 1449, 1468 (5th Cir. 1992).  *See also United States v. Srivistan*, 476 F.Supp.2d 509, 511 (D. Md. 2008), *rev'd on other grounds*, *United States v. Srivista*n, 540 F.3d 277 (4th Cir.2007); *United States v. Fell*, 372 F.Supp.2d 773, 779–80 (D. Vt. 2005); *United States v. D'Armond*, 80 F.Supp.2d 1157, 1170 (D. Kan. 1999).  Therefore, this Court shall rely on the standard used under Rule 59(e), which allows a party to move a court to alter or to amend a final judgment.

"In general, 'reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.'"  *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting 11 Charles Alan Wright, et al., Federal Practice and Procedure, § 2810.1 at 124).  While Rule 59(e) itself does not articulate a standard under which a district court may grant a motion to alter or amend a judgment, the Fourth Circuit has recognized the following three grounds for amending a prior judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  *Id.*

---

¹ In a letter filed with the Court on June 15, 2021—and following a supplemental filing, (ECF No. 229), by Maudlin identifying the Government's failure to respond—the Government conceded that it had failed to respond to Maudlin's motion as they "assumed it would be handled orally prior to trial."  (ECF No. 231.)  The Government admits that, following the trial's continuance, they became preoccupied with "packing up [their] trial materials and communicating with witnesses and neglected to ask the Court to set a scheduling order for the motion."  (*Id.*)  The Government subsequently filed its response on June 21.  (ECF No. 231.)

2

"Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.*

### III.   DISCUSSION

Maudlin's motion appears to be premised on the second factor, newly discovered evidence that was not available to him at the motions hearing. (*See* ECF No. 222 at 2.) Maudlin argues that new information regarding the credibility of one of the Government's witnesses, Special Agent Gregg Domroe ("Domroe"), warrants the granting of his motion to suppress. (*Id.* at 2.) In essence, Maudlin now argues that Domroe's testimony cannot be trusted because Domroe stated that the interviewing agents used an outline in questioning Maudlin, and the Government later conceded that Domroe had been "mistaken" and no outline had been used. (*Id.* at 3.) Maudlin argues that, in its original ruling, the Court relied on Domroe's testimony that Maudlin himself terminated the interview, which was the "dispositive factor." (*Id.* at 2.) But now, Maudlin argues that because Domroe's testimony that Maudlin terminated the interview cannot be trusted, this Court should reconsider its ruling. (*Id.* at 7.)

In response, the Government argues that the motion should be denied because it fails to meet the high standard required for the granting of a motion to reconsider. (ECF No. 231 at 1.) Among other things, the Government argues that this evidence should not be considered "new," as defense counsel was presented the opportunity to pursue this line of questioning but "failed to do so." (*Id.* at 5.) Moreover, the Government asserts that whether an outline was used is entirely irrelevant to the core question of whether a reasonable person would have felt free to end the interview and leave. (*Id.* at 5.) Finally, the Government asserts that the Court carefully considered every factor in its suppression analysis, such that no single factor was dispositive. (*Id.* at 9.)

A. *Motions Hearing*

During the motions hearing on April 7, 2021, the Court received the following testimony from Domroe:

**Q.** Did you know what questions you were going to ask before the meeting?

**A.** We had a lineup of certain questions, yes.

**Q.** Where are those?

**A.** I don't have them on me. I'd have to check in our files.

**Q.** We've never received them, so can you produce them?

**A.** Again, I'll have to go back to our files and check them.

**Q.** Who prepared them?

**A.** That would have been Special Agent Weiland.

**Q.** You're talking about something different from your handwritten notes of the meeting?

**A.** Correct.

**Q.** There was a separate outline of questions?

**A.** We would have usually typewritten some questions that we wanted to ask.

**Q.** And you would have been referring to it in the meeting?

**A.** That's correct.

(Motions Hearing Transcript at 90:25–91:16.)  This testimony led Maudlin's counsel to contact the Government after the hearing to request a copy of the outline that Domroe referenced. The Government responded to counsel's inquiry and, after failing to locate the outline, conceded that Domroe "was mistaken" about the outline and that an outline was not used in the agents' questioning

4

of Maudlin. (ECF No. 222, Ex. A.) Beyond this line of questioning, Maudlin's counsel did not inquire further as to the outline.

Maudlin argues that Domroe's further testimony in which he stated that "Mr. Maudlin advised that he just wanted to conclude the interview, at which time we did," is untrustworthy, and the Court's reliance on the testimony to reach the conclusion that Maudlin was not in custody is mistaken. (ECF No. 222 at 4.) In particular, Maudlin asserts that Domroe was the only witness to testify that Maudlin himself terminated the interview. (*Id.*) Maudlin also asserts that Special Agent Jeffery Weiland's ("Weiland") testimony runs "directly counter" to Domroe's. (*Id.*)

During this same hearing, Weiland testified that Maudlin declined to cooperate in the investigation, as follows:

> **A.** I don't remember. There probably wasn't any [back and forth]. He said no and then he said, you know, so what happens next. And then I explained to him, well our plan now since we've already let you know of our investigation, we're going to go overt and we're going to interview everyone that we believe has knowledge of Xerox's and TCC's contracts, with the State of Maryland.
>
> **Q.** So you asked him for his cooperation, he said no and asked you what happens next?
>
> **A.** Yes.
>
> **Q.** And you told him that next you would go out and interview other people?
>
> **A.** Yup, I know I said Coffland and Fitzgerald for sure as two of the people we were going to interview and then generically other people that we thought had information relevant to Xerox's contracts with the state, yes.
>
> \*\*\*
>
> **Q.** Well, so when he asked you what happens next, was the end of the meeting discussed at some point in time?
>
> **A.** I don't know if you'd call it discussing the end of the meeting, but I told him if he was done talking to us, if he wasn't going to cooperate then we were done talking to him, that he would be able to leave and that then we were going to tell

>   the other agents, they were already standing by to go ahead and execute and interview the other people involved. The other people with knowledge of the investigation. Not all of them were involved with the criminal investigation.

(Motions Hearing Transcript at 108:23–109:13; 110:7–16.) The thrust, then, of Maudlin's argument is that Domroe's testimony conflicts with Weiland's testimony and because Domroe's testimony regarding the outline was "mistaken," his testimony here cannot also be trusted.

B. *Motion to Reconsider*

Maudlin's motion fails to meet the standard necessary for this Court to grant the relief he seeks. First, the Court sincerely questions whether this evidence can even be considered as "new," as neither the Government nor Maudlin pressed Domroe on the existence of or use of an outline in questioning Domroe. While the non-existence of the outline itself is a "new" discovery, that information was available when the motion to suppress was heard, and Maudlin has failed to show that he had made any effort to discover that information beforehand.[2] *See, e.g.*, *Miller v. Rosenker*, Civ. Action No. 05-2478 (GK), 2008 WL 11403193 (D.D.C. Sep. 4, 2008) ("A fact is not 'new' simply because the Plaintiff has neglected to use it as the basis for an argument in a previous filing. Rather, to be considered 'new,' a previously unavailable fact must become available."); *In re Sun Healthcare Group, Inc.*, 214 F.R.D. 671, 673 (D.N.M. 2003) ("If a party is seeking to supplement its Rule 59(e) motion with 'new evidence,' the party must show either that (a) the evidence is newly discovered, or (2) if the evidence was available when summary judgment was granted, that counsel made a diligent though unsuccessful attempt to discover the evidence."). Instead, Maudlin appears to be arguing that the Court consider his subsequent investigation into the facts and re-weigh the

---

[2] To this point, whether an outline exists of an interview that occurred seven years ago is not germane to the *Miranda* analysis. To be sure, credibility is always at issue, and therefore evidence concerning credibility is relevant, see *United States v. Repak*, 852 F.3d 230 249–50 (3d. Cir. 2017), but whether the outline existed does not go to the heart of whether Maudlin was properly considered to be in custody.

credibility of Domroe.  *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) ("Although there may be many valid reasons to reconsider an order, 'a motion to reconsider is not a license to reargue the merits or present new evidence' that was previously available to the movant.").  Despite Maudlin's apparent assertions otherwise, this Court observed the witnesses, determined their credibility, drew reasonable inferences,[3] and made its findings of fact.  A review of the record reveals that those findings were correct, and Maudlin's motion shall be denied.  *See, e.g.*, *Williams v. Housing Auth. of City of Raleigh*, 595 F.Supp.2d 627, 630–31 (E.D.N.C. 2008).

But more to the point, even if Maudlin's presentation of "new" evidence was accepted, the Court believes Maudlin's argument to be without merit.  In its original order, the Court weighed the numerous factors in the *Miranda* analysis, including the location of the questioning, the words and demeanor of the interviewing agents, the duration of the questioning, the absence of physical restraints, the presence of officers, and most critically whether Maudlin was released at the end of the interview.  (*See* ECF No. 214 at 54:23–63:9.)  Moreover, the Court weighed the testimony and the credibility of the witnesses, and even chose to not credit some of Domroe's testimony, specifically that he informed Maudlin at the start of the interview that he was free to leave at any time, and even called his testimony "somewhat weak."  (ECF No. 214 at 62:22.)  The most important factor the Court identified however, and the fact that Maudlin takes issue with, is the cessation of that interview and Maudlin walking free from it.

In Maudlin's rush to seize on a perceived discrepancy in the testimony, he ignores what the Court viewed to be the critical fact: Maudlin walked free after refusing to cooperate.  It was not that

---

[3] Certainly, viewing Domroe's testimony in full context, once could easily infer that he was not fully confident that an outline was actually used, but rather that outlines were *typically* or *usually* used in these instances, especially when he stated that he would have to "check our files" multiple times.

he expressly requested that the interview be terminated; it was that despite being told what the investigation's next steps were should he not cooperate, he chose to not cooperate and was subsequently escorted from the building.  The inconsistency that Maudlin identifies, highlighted in the previous section, is nothing more than an exercise in semantics.  For example, it is undisputed that Weiland testified that Maudlin was informed of what was to happen that day if he chose not to cooperate—that investigators would move forward with the investigation and that he would be allowed to leave.  (Motions Hearing Transcript at 108:23–109:13.)  Maudlin himself confirmed that the agents told him what would happen should he choose not to cooperate with the investigation.[4] (*Id.* at 153:6–9.)

Indeed, Domroe testified similarly to Weiland and Maudlin.  In fact, Domroe stated that Maudlin was made aware of the next steps, as follows:

> **Q.** [W]as the end of the interview discussed, what would happen at the conclusion of the interview?
>
> **A.** It was. We advised him that, you know, depending on his level of cooperation, if he didn't want to cooperate that was his decision, but if he didn't cooperate that we were going to proceed with the interviews in the two states.
>
> **Q.** And did Mr. Maudlin want you to do that?
>
> **A.** He did not.

(*Id.* at 38:15–22.)  Thus, claiming that Domroe's testimony runs "directly counter" to Weiland's, or even Maudlin's himself, when all three testified that Maudlin refused to cooperate with the investigation knowing full well what the consequences were when he chose not to cooperate, i.e., the

---

[4] Maudlin's own testimony is rather inconsistent as to what specifically he recalls as to the end of the interview.  At several points, he acknowledges that the interviewing agents told him that if he refused to cooperate, law enforcement was prepared to conduct further interviews of his co-defendants.  (Motions Hearing Tr. at 153:6–9; 154:2–4.)  In other instances, however, Maudlin—rather obliquely—testifies that the agents only "referenced a plan," without "operational details." (*Id.* at 157:16–158:1.)  Again, however, in weighing the credibility of the witnesses and their testimony, the Court believes the larger context to be true that Maudlin was made aware of the consequences of his refusal to cooperate.

8

investigation going "overt," Maudlin as well as ended the interview himself.

The Court, in the very next passage of its decision, emphasized that a defendant who leaves an interview without being arrested is a major factor in the analysis. The Court stated, as follows:

> So -- and, again, I will note *Mathiason*, *Beheler* and also, *United States v. Crawford*, 372 F.3d 1048, Page 1059, a Ninth Circuit case from 2004, which says, quote, "Questioning does not amount to custodial interrogation where, as here, the suspect is told that he's not under arrest and is free to leave, and does, in fact, leave without hindrance." Also, *United States v. Galceran*, 301 F.3d 927, Page 931, an Eighth Circuit case from 2002, which says, "Lack of arrest is a", quote, "very important", end quote, "factor weighing against custody."

(ECF No. 214 at 62:8–17.) Furthermore, and as the Government correctly argues, while the Court did identify this point as the "most dispositive fact," no fact by itself was necessarily determinative. *See United States v. Galceran*, 301 F.3d 927, 930 (8th Cir. 2002). Instead, it was the cumulative weight of the factors, including that Maudlin was not arrested at the conclusion of the interview or at his refusal to cooperate. (ECF No. 214 at 63:4–9.) Simply put, Maudlin's selective reading of the testimony and this Court's decision does not warrant reconsideration.

### IV.   CONCLUSION

For the foregoing reasons, Maudlin's Motion for Reconsideration of Steven Maudlin's Motion to Suppress Statements, (ECF No. 222), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendants and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: November 2, 2021

_____
THOMAS E. JOHNSTON, CHIEF JUDGE

10